352 F.2d 32
 PAN AMERICAN PETROLEUM CORPORATION, a corporation, and Charles B. Gonsales, Appellants,
v.
Stewart L. UDALL, individually and as Secretary of the Department of the Interior, Washington, D. C., Michael T. Sloan, Individually and as Manager of the United States Land Office, Sante Fe, New Mexico, Bureau of Land Management, Department of the Interior: W. J. Anderson, Individually and as Acting State Director for the State of New Mexico, Bureau of Land Management, Department of the Interior: and Western Oil Fields, Inc., Appellees.
 No. 7878.
 United States Court of Appeals Tenth Circuit.
 November 8, 1965.
 
 1
 Anthony J. Albert, Santa Fe, N. M., for appellant Charles B. Gonsales (Atwood & Malone, Roswell, N. M., for appellant Pan American Petroleum Corporation, with him on the brief).
 
 
 2
 Richard N. Countiss, Atty., Department of Justice (Edwin L. Weisl, Jr., Asst. Atty. Gen., John Quinn, U. S. Atty., John A. Babington, Asst. U. S. Atty., and S. Billingsley Hill, Atty., Department of Justice, were on the brief), for appellee Stewart L. Udall.
 
 
 3
 Thomas F. McKenna, Santa Fe, N. M., for appellee Western Oil Fields, Inc.
 
 
 4
 Before PICKETT and SETH, Circuit Judges, and CHRISTENSEN, District Judge.
 
 
 5
 CHRISTENSEN, District Judge.
 
 
 6
 The previously filed opinion is withdrawn.
 
 
 7
 This is an action in the nature of mandamus seeking judicial review of the final decision of the Secretary of the Interior, who in effect had denied appellant Gonsales oil and gas leases on the public domain pursuant to the Mineral Leasing Act, 30 U.S.C. §§ 181-236, and the pertinent Interior regulations 43 C.F.R. § 191 et seq. Competing applicants for the two leases originally had contested their issuance to Gonsales. The Secretary of the Interior ordered the cancelation of Gonsales' leases on the finding that Gonsales had violated Interior regulation 43 C.F.R. § 192.42 (e) (4) (1954)[1] by failing to file a required statement disclosing the agency relationship between him and his son Garrett Quintana. The leases were thereupon ordered awarded to the next qualified applicants. Competing applicants as to lease No. 042700 were Southern California Petroleum Corporation, E. A. Culbertson and Wallace W. Irwin, and as to lease No. 070510, Western Oil Fields, Inc. Appellant Pan American Petroleum Corporation is the assignee of Gonsales.
 
 
 8
 The trial court granted the motion for summary judgment filed by the Secretary and joined in by the intervenor Western Oil Fields, Inc., and this appeal tests the judgment below which dismissed the action for review without relief.
 
 
 9
 Gonsales appealed to the Secretary of the Interior from a decision of September 22, 1960, of the Acting Director of the Bureau of Land Management which directed that his noncompetitive oil and gas lease, No. 042700, be canceled and reversed a decision of the Santa Fe land office rejecting the conflicting offer New Mexico 057239 filed by Southern California Petroleum Corporation, E. A. Culbertson and Wallace W. Irwin. Western Oil Fields, Inc., appealed to the Secretary from a decision of March 14, 1961, of the Acting Appeals Officer of the Bureau of Land Management rejecting its noncompetitive offer to lease for oil and gas, New Mexico 070521, for conflict with two outstanding oil and gas leases. This appeal was limited to the rejection of the offer insofar as it conflicted with lease No. 070510. The Secretary determined that both of the leases in question here were invalid by reason of the absence of the statement of agency required by the regulations.
 
 
 10
 The appellants on this appeal attack the judgment of the trial court sustaining in effect the decision of the Secretary, upon the grounds that (1) the administrative interpretation of 43 C.F.R. 192.42(e) (4) by the Secretary of the Interior to the extent that it purported to require the filing of a statement with reference to the questioned agency was erroneous; (2) that there was insufficient evidence before the Secretary to support his finding that Quintana acted or was authorized to act as agent for the offeror, Gonsales, and (3) that the undisputed facts before the Secretary established that the leases were properly issued to Gonsales.
 
 
 11
 The evidence before the Secretary indicated that Gonsales and his son worked together in seeking mineral leases on the public domain. Quintana was a petroleum geologist and did geological work for Gonsales, checked the land office records daily, prepared and filed offers to lease for his father and occasionally for himself, and received a substantial salary from his father for his work. Gonsales ordinarily signed the offers, sometimes in blank and sometimes after Quintana had prepared them and given Quintana checks to pay for the leases with the amount left blank to be completed when the offers were filed. Quintana had authority to file an offer for Gonsales "anytime anything comes up". There was evidence that the offers to lease were prepared by Quintana, signed by Gonsales and filed by Quintana. As to one of the leases, Quintana had heard a rumor that "this was a good lease to watch" and acting on that information had prepared and filed the offer for Gonsales. Quintana offered to sell the acreage covered by one of the leases, and described himself as "agent" in requesting the examination of the official case records concerning both.
 
 
 12
 There was evidence from which it fairly could be inferred that a broad agency was involved, relating not only to the filing of offers but to the securing of leases and the disposal of leases on behalf of Gonsales, from which Quintana might obtain some royalty interest. While there was no direct evidence as to the relationship precisely at the time the respective offers were filed or leases issued, there was no evidence adduced that the relationship had changed.[2] It reasonably could be assumed that undisclosed evidence on this point not produced by appellant but peculiarly under his control would have been unfavorable to him.
 
 
 13
 The Secretary concluded that an agency relationship existed between Quintana and Gonsales, and specifically concluded that Quintana had authority to act as to lease 070510 both before and after the offer to lease was filed. He implicitly concluded the same thing as to the other lease by adopting the holding of the Director of the Bureau of Land Management who had found, on the basis of evidence both before and after the offer to lease, that Quintana was an agent at the time of filing the offer. The Secretary further concluded that this was the kind of agency relationship that must be disclosed under 43 C.F.R. § 192.42(e) (4) (1954) at the time an offer is filed.
 
 
 14
 If on the whole record there is evidence to support the findings of the Secretary, those findings are controlling and should not be disturbed.[3] And when courts are called upon to review the Secretary's interpretation of regulations made by him, his interpretation is likewise entitled to deference.[4]
 
 
 15
 We conclude that the evidence was adequate to support the findings of the Secretary, that his interpretation of the regulations, although the wisdom of the regulation might appear debatable, was not irrational or arbitrary, that the regulation itself was not invalid, and that the summary judgment, sustaining the decision of the Secretary, was not erroneous. The fact that the regulation in question has now been replaced by an apparently more sensible one requiring directly the disclosure of all outstanding interests in offers to lease does not impeach the enforcement of the old regulation for the period it was in effect.[5]
 
 
 16
 Foster v. Udall, 335 F.2d 828 (10th Cir. 1964), heavily relied upon by appellants really does not support their position. In Foster the only evidence of agency concerned pre-filing responsibilities and the nature of the evidence was specifically self-limiting to a period before the filing. The question there was whether pre-filing agency not shown nor claimed to have been carried over to the time of filing, and being such as to preclude an inference that it was continuing, invoked the regulation in question. That agency was controlled by a written agreement. It provided that the agent was to advise the appellants when suitable land was open for leasing and to give his opinion as to the potential of such land. The agent also agreed to file executed forms of applications for lease when signed personally by the appellants and transmitted to him accompanied by appellants' check for the fees and rentals, and the agreement also provided that he would "offer its assistance" in expediting the return of checks from the land office if the appellants were unsuccessful in the filing. Under the contract the agent also agreed to advise appellants as to the best means of developing the property should they get the lease. None of these responsibilities carried over to the actual time of filing, and any inference that they might was precluded by the express terms of the agreement of agency. The record in Foster clearly showed that the agent had no interest in the offer after it was filed and that whatever duties he had with respect to the form ceased when it was filed and thereby became an offer. This court held that "the service agreement contemplated only prefiling services, not an agency with regard to the offer, and these did not come within the regulations". Thus, the agent was not "an attorney in fact or an agent" authorized to act on behalf of the offeror with respect to the offer or lease.
 
 
 17
 In the case now before the court, however, the trial court had before it the findings of the Secretary, based upon adequate evidence, not merely that there was a pre-filing agency but that there was a broad and continuing agency covering the period both before the filing of the applications in question and after that filing and, by almost inescapable inference, at the time of the filing. The Secretary was not limited to a consideration of the relationship prior to the filing because, unlike the situation in Foster, the evidence here permitted the reasonable inference that the agency continued, which inference was confirmed by evidence concerning the post-filing period.
 
 
 18
 Apart from the period of the agency, there was evidence tending to indicate that the agency was of the nature reasonably contemplated by the regulations. On this point, also, the Secretary's determination in the interpretation of his regulation is entitled to great weight.[6] The type of agency established was reasonably within the reach of the language utilized in the regulation.[7]
 
 
 19
 The facts found by the Secretary are supported by competent evidence and his interpretation of the applicable legal principles appears neither unreasonable nor arbitrary. Accordingly, the judgment of the lower court is affirmed.
 
 
 
 Notes:
 
 
 [1]
 During the period in question here, the regulation of the Secretary of the Interior provided in pertinent part (43 C.F.R. § 192.42(e) (4) (1954 ed.):
 "(e) Each offer, when first filed, shall be accompanied by:
 * * * *
 "(4) If the offer is signed by an attorney in fact or agent, or if any attorney in fact or agent has been authorized to act on behalf of the offeror with respect to the offer or lease, separate statements over the signatures of the attorney in fact or agent and the offeror stating whether or not there is any agreement or understanding between them, or with any other person, either verbal or written by which the attorney in fact or agent or such other person has received, or is to receive, any interest in the lease when issued, including royalty interest or interest in an operating agreement under the lease giving full details of the agreement or understanding, if it is a verbal one; the statement must be accompanied by a copy of any such written agreement or understanding. * * *" (There is now in effect (as of April 15, 1964) an amendment to 43 C.F.R. 192.42 (e) (4) (1954) which has, among other things, eliminated the controversial provision of "if an attorney in fact or agent has been authorized to act on behalf of the offeror with respect to the offer or lease. * * *")
 
 
 [2]
 Smokeless Fuel Co. v. Western United Corporation, 19 F.2d 834 (4th Cir. 1927)
 
 
 [3]
 De Cambra v. Rogers, 189 U.S. 119, 23 S.Ct. 519, 47 L.Ed. 734 (1903); Morgan v. Udall, 113 U.S.App.D.C. 192, 306 F.2d 799 (1962)
 
 
 [4]
 Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Boesche v. Udall, 373 U.S. 472, 83 S.Ct. 1373, 10 L.Ed.2d 491 (1963); Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945); Southwestern Petroleum Corp. v. Udall, 325 F. 2d 633 (D.C.Cir. 1963). See also the late case of Robertson v. Udall, 349 F. 2d 195 (D.C.Cir. 1965)
 
 
 [5]
 The circumstances here suggest some possible relevancy of the inquiry concerning agency to the question of interest, although we do not mean to suggest that any actual interest of Quintana in the leases was shown. The son of the appellant Gonsales was shown to have been the initiator of offers on behalf of his father, he apparently did most of such work for his father, and he himself determined whether offers would be filed in his own name or that of his father. While he denied that he had any interest in leases to be issued in the name of his father he conceded the possibility that he could have royalty interest therein as a result of further developments. A statement as to the facts of such agencies could well be of assistance to the administrative agency in investigating in advance of leasing the possible outstanding interests
 
 
 [6]
 Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), supra
 
 
 [7]
 See Kunz v. Lowden, 124 F.2d 911 (10th Cir. 1942)