395 F.2d 533
 Jack J. GRAY, Appellant,
v.
Howard F. JOHNSON, Individually and as Superintendent of the
Osage IndianAgency, Pawhuska, Oklahoma, Virgil N.
Harrington, Individually, and as AreaDirector of the Bureau
of Indian Affairs, Muskogee, Oklahoma, Stuart Udall
asSecretary of theInterior, and Oklahoma Land & Cattle
Company, Appellees.
 No. 9627.
 United States Court of Appeals Tenth Circuit.
 Feb. 8, 1968.
Rehearing Denied March 8, 1968.
Certiorari Denied June 10, 1968.
 
 Robert P. Kelly, Pawhuska, Okl., for appellant.
 Frank B. Friedman, Atty., Dept. of Justice (J. Edward Williams, Acting Asst. Atty. Gen., Lawrence A. McSoud, U.S. Atty., Hubert A. Marlow, Asst. U.S. Atty., and A. Donald Mileur, Atty., Dept. of Justice, were with him on the brief), for appellees Johnson, Harrington and Udall.
 Jesse J. Worten, Bartlesville, Okl., for appellee Oklahoma Land & Cattle Company.
 Before MURRAH, Chief Judge, BREITENSTEIN, Circuit Judge, and DELEHANT,[1] District Judge.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 The Secretary of the Interior held that a lease to appellant Gray of Osage Indian land was void because of violations of applicable regulations. Gray brought suit to review the decision of the Secretary. Jurisdiction is granted by 28 U.S.C. 1361. The district court upheld the Secretary and this appeal followed.
 
 
 2
 William Fletcher, a full-blood Osage Indian, owns 400 acres of restricted Osage Indian land in Oklahoma. The land was leased to James who had difficulty in complying with lease terms. Appellee Oklahoma Land & Cattle Company, intervenor below and herein referred to as intervenor, learned that the James lease was to be cancelled. At the suggestion of Ware, the Chief of the Realty Section of the Osage Agency, Intervenor secured from Fletcher a letter requesting the cancellation of the James lease and a signed lease running to intervenor and carrying a yearly rental of $1,094. Ware rejected the lease and told intervenor that he would inform it of future developments.
 
 
 3
 Later, appellant Gray told Ware that he would pay a yearly rental of $1,325 for the Fletcher land under a lease carrying a 10-year term. Ware prepared a lease to Gray and a notice to be signed by Fletcher for the cancellation of the James lease. Fletcher signed the lease and the cancellation notice. Gray then executed the lease, and it was approved by the Superintendent of the Osage Agency on July 20, 1964. About three months later, the intervenor learned of the lease to Gray. It then obtained a lease from Fletcher for a 10-year term at a $1,500 annual rental and submitted the lease to the agency. The Superintendent denied approval on the ground that the land was leased to Gray.
 
 
 4
 Fletcher and intervenor appealed the decision of the Superintendent and asserted that the Gray lease should be cancelled and the lease to intervenor approved. The Area Director of the Bureau of Indian Affairs refused to approve intervenor's lease and denied the appeal as to the refusal of the Superintendent to approve that lease. The Area Director nevertheless cancelled the Gray lease and directed that the land be offered for lease under sealed bids for a term not to exceed five years. Gray appealed to the Commissioner of Indian Affairs who found the Gray lease void because of violations of applicable regulations. That decision was affirmed by an Assistant Secretary of the Interior acting for the Secretary. The administrative remedies have been exhausted.
 
 
 5
 Normally an appeal from action by a Superintendent on a lease must be taken within 20 days and no appeal was taken within that time. See 25 C.F.R. 2.10. An exception is provided by 25 C.F.R. 2.14 when it is found that failure to appeal results 'in an inequity or injustice to the Indian.' The Area Director found that the approval of the Gray lease was not in the best interest of the Indian. The district court agreed with this finding. It is sustained by the record. The local Indian Office knew of the interest of intervenor in the lease and took no steps to provide for competitive bids. The lease proposed by the intervenor carries a rental which is $175 a year higher than that provided by the lease to Gray. The Indian relied on the Agency to look after his land and signed the papers which they submitted to him, sometimes without even reading them.
 
 
 6
 Gray argues that no appeal was taken from the approval of his lease but rather from the denial of the lease to intervenor. The appeal was taken by both Fletcher and intervenor. It attacks the validity of the Gray lease. At the most Gray's argument goes to the form of the appeal. The substance of the petition on appeal was sufficient to bring before the Area Director the issue of the validity of the approval of the Gray lease.
 
 
 7
 Gray further argues that the regulations permit an appeal by a party adversely affected and that Fletcher was not so affected because he signed the Gray lease and stated that he intended to honor it. The argument would be persuasive if applied to a person of full competency. We are concerned with a situation in which a lease cannot become effective until approved by an agency of the United States. See 25 U.S.C. 393, 393a; and25 C.F.R. 131.5(a). The supervisory power is for the benefit of the Indian. We held in Bailey v. Banister, 10 Cir., 200 F.2d 683, 685, that the United States has the duty to get 'the best possible price' for the Indian. As a practical matter, the Indian is adversely affected by the loss of that amount by which a competitively bargained for lease would exceed the amount of the Gray lease rent. In our opinion the appeal was permitted by the regulations and the findings of the Area Director.
 
 
 8
 The Secretary found that the ten-year lease to Gray was void for two violations of the regulations relating to the lease term. One regulation, 25 C.F.R. 131.8, says that 'the lease shall provide for periodic review, at not less than five-year intervals, of the equities involved.' The lease is on a form bearing the title 'U.S. Department of the Interior, Bureau of Indian Affairs.' It states that it is made 'under and in accordance with the existing laws and regulations prescribed by the Secretary of the Interior, * * * which, by reference, are made a part hereof.' The effect of this provision is to make the regulations a part of the lease by agreement of the parties. See Seber v. Spring Oil Co., N.D.Okl., 33 F.Supp. 805, 809. Hence, the five-year review provision was a part of the lease and the Secretary erred in holding that the lease was void because of failure to spell out in the lease the review requirement.
 
 
 9
 The Secretary also held that the Gray lease was void because it violated 25 C.F.R. 131.8(c) which says that: 'Farming leases not granted for the purpose of growing specialized crops shall not exceed five years for dry-farming land or ten years for irrigable land.' The lease bears the title 'Farming Lease.' It covers 310 acres of grazing land. Of the remaining, 84 acres were to be planted in Bermuda grass during the term of the lease. Gray says that because so much of the area was grassland, or to become grassland, the action of the Secretary in classifying the land as dry-farming was arbitrary and capricious.
 
 
 10
 We are concerned with an interpretation by the Secretary of his own regulations. That interpretation has controlling weight 'unless it is plainly erroneous or inconsistent with the regulation.' See Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413-414, 65 S.Ct. 1215, 89 L.Ed. 1700; Harvey v. Udall, 10 Cir., 384 F.2d 883. The Secretary interpreted the regulations to require that where a lease contains both dry-farm and grazing land, the term limitation relating to dry farmland controls. The Secretary's determination is supported by the nomenclature of the lease and the fact that part of the land was devoted to farming. Such decision in neither arbitrary, capricious, plainly erroneous, nor inconsistent with the regulation. In the circumstances, the execution of the lease was an administrative error which the Secretary can correct by cancellation of the lease. See Boesche v. Udall, 373 U.S. 472, 485, 83 S.Ct. 1373, 10 L.Ed.2d 491, and Pan American Petroleum Corporation v. Pierson, 10 Cir., 284 F.2d 649, 657, cert. denied 366 U.S. 936, 81 S.Ct. 1661, 6 L.Ed.2d 848. We believe that the action of the Secretary was proper.
 
 
 11
 The cancellation of the lease does not deprive Gray of any vested property right. Gray cites Seaton v. Texas Co., 103 U.S.App.D.C. 163, 256 F.2d 718, and other cases to the point that once the United States, acting through an administrative agency, has granted unqualifiedly an interest in land, that grant may not be rescinded. The cases are distinguishable because they relate to no regulation such as 25 C.F.R. 2.14 which makes approval of the lease subject to a continuing right of appeal in the case of injustice to the Indian. The Gray lease was attacked on an appeal by the Indian. The government did not act sua sponte. On appeal it was held that the lease was not in the best interest of the Indian and that it violated a pertinent regulation. Actions by the local agency contrary to the regulations and contrary to the best interest of the Indian do not create a vested right in the lease. Agents of the government must act within the bounds of their authority; and one who deals with them assumes the risk that they are so acting. See Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10.
 
 
 12
 Gray's reliance on 9(a) and (b) of the Administrative Procedure Act does not help his cause. See 5 U.S.C. 1008, reenacted in 1966 without significant change as 5 U.S.C. 558. Subsection (a) forbids the imposition of a sanction 'except within jurisdiction delegated to the agency and as authorized by law.' We believe that the actions of the Secretary were proper under the applicable law and regulations. Subsection (b) says that a license may not be revoked without notice and without an opportunity being given to the holder to achieve compliance. We doubt whether this subsection was intended to apply to the reversal on appeal of a subordinate's approval of proposed action. In any event Gray never offered to abandon his lease and comply with the regulations. His contention was and is that his lease is good. We have rejected that contention.
 
 
 13
 Affirmed.
 
 
 14
 MURRAH, Chief Judge (dissenting).
 
 
 15
 I cannot bring myself to believe that the Secretary is empowered to cancel this lease on appeal, out of time, on the ground of 'inequity or injustice to the indian' when the only alleged ground of inequity or injustice is that someone else offered an insubstantially higher price after the lease was duly approved by the Indian Agency Superintendent. There is no implication of fraud or overreaching even though the indian merely signed what was put before him. The Superintendent exercised the judgment, not the indian.
 
 
 16
 I would reverse.
 
 
 
 [1]
 Senior District Judge of the Eighth Circuit, sitting by designation